IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

NOBLE ALI BEY,
        Plaintiff,

        v.                                                          Civil No. 3:20cv931 (DJN)

ROBERT R. MICHAEL, *et al.*,
        Defendants.

**MEMORANDUM OPINION**

Plaintiff Noble Ali Bey, proceeding *pro se*, brings this action, alleging that Defendants

BWW Law Group, LLC ("BWW"), Robert Michael ("Michael"), Amy McNulty ("McNulty")

and Glen Messina ("Messina") have violated various state and federal laws related to the

foreclosure of a property for which Plaintiff serves as trustee.  This matter comes before the

Court on Plaintiff's Motion for Leave to Amend ("Mot. to Amend" (ECF No. 8)), Plaintiff's

"Motion to File Civ. R. 65(a) Emergency Temporary Restraining Order, Ex Parte Hearing and

Motion to Proceed with Application for Preliminary Injunction" ("TRO Motion" (ECF No. 9))

and the Motions to Dismiss filed by Defendants Amy McNulty ("McNulty's Motion" (ECF No.

4)), BWW Law Group and Robert Michael ("BWW's Motion" (ECF No. 10)) and Glen Messina

("Messina's Motion" (ECF No. 13)).

For the following reasons, the Court hereby GRANTS Plaintiff's Motion for Leave to

Amend (ECF No. 8), DENIES AS MOOT Defendant McNulty's Motion to Dismiss (ECF No.

4), GRANTS Defendants BWW and Michael's Motion to Dismiss (ECF No. 10) and Defendant

Messina's Motion to Dismiss (ECF Nos. 13) and DENIES Plaintiff's TRO Motion (ECF No. 9).

Therefore, the Court DISMISSES Plaintiff's Amended Complaint as to all Defendants, because

Plaintiff has failed to state a claim upon which relief can be granted regardless of the parties to this suit.  Specifically, the Court DISMISSES WITH PREJUDICE Plaintiff's Wrongful Foreclosure claim, Truth in Lending Act ("TILA") claim and slander of credit claim, but DISMISSES WITHOUT PREJUDICE Plaintiff's other claims.

## I.    BACKGROUND

### A.    Factual Background

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true the well-plead factual allegations set forth in Plaintiff's pleadings.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, "the Court may consider the facts alleged on the face of the complaint, as well as matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Silverman v. Town of Blackstone, Va.*, 843 F. Supp. 2d 628, 631 (E.D. Va. 2012) (internal citations omitted).  Against that backdrop, the Court accepts the following facts as alleged for purposes of resolving Defendants' Motions to Dismiss.

Plaintiff Noble Ali Bey[1] filed a Complaint on December 7, 2020, alleging that a property located at 4312 Bridgewood Road, Midlothian, Virginia, 23112 (the "Property"), had been wrongfully foreclosed upon.  (Compl. at 1.)  According to the exhibits attached to Plaintiff's

---

[1]    The exact identity of Plaintiff Noble Ali Bey remains unclear.  According to the documents attached to Plaintiff's pleadings, Shawn D. Carter executed a Deed of Gift to "Noble Ali Bey . . . a religious organization." ("Deed of Gift" (ECF No. 1-3) at 1.)  However, Plaintiff Noble Ali Bey appears to also identify as an individual person, as he also claims that he "is a resident of Chesterfield, Virginia." (Compl. ¶ 11.1.)  Still elsewhere in his pleadings, Noble Ali Bey seems to claim that "Shawn D. Carter" is merely an alias for Noble Ali Bey:  "I, the Affiant, who goes by Noble Ali Bey and Shawn D. Carter . . . ." (Mot. to Amend at 3.)  However, for the purposes of resolving these Motions, the Court will presume that Noble Ali Bey represents a living person and an individual separate and distinct from Shawn Carter.  However, this marks one of the many ways in which this action and Plaintiff's pleadings prove nearly impossible to interpret.

Complaint and Defendants' Motions[2], an individual named Shawn D. Carter obtained a $97,500

mortgage loan secured by the Property, on or around March 30, 2006. ("Deed of Trust" (ECF

No. 1-2) at 1.)  The parties memorialized this transaction in a recorded deed of trust.  (Deed of

Trust at 2.)  The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS")

as the intended beneficiary.  (Deed of Trust at 2.)  MERS acted as a nominee for the lender,

Solstice Capital Group, Inc.  (Deed of Trust at 3.)

On December 11, 2007, MERS assigned the Deed of Trust to Deutsche Bank Trust

Company Americas, formerly known as Banker's Trust Company, as Trustee and Custodian for

IXIS 2006-HE3 by Saxon Mortgage Services, Inc., formerly known as Meritch Mortgage

Services, Inc., as its Authorized Servicing Agent ("Deutsche Bank IXIS 2006-HE3 by Saxon").

("2007 Certificate of Assignment" (ECF No. 14-2) at 4.)  On March 16, 2009, Deutsche Bank

IXIS 2006-HE3 by Saxon assigned the Deed of Trust to Deutsche Bank National Trust

Company, as Trustee for IXIS Real Estate Capital Trust 2006-HE3 ("Deutsche Bank IXIS 2006-

HE3).  ("2009 Certificate of Assignment" (ECF No. 14-3) at 3.)  On July 11, 2019, MERS

sought to assign the Deed of Trust to Deutsche Bank National Trust Company, as Trustee for

GSAMP Trust 2006-NC2, Mortgage Pass-Through Certificates Series 2006-NC2 ("Deutsche

Bank 2006-NC2") by a Corporate Assignment of Deed of Trust.  ("2019 Corporate Assignment"

(ECF No. 14-4) at 2.)

Finally, on June 30, 2020, Deutsche Bank IXIS 2006-HE3 assigned its interest in the

Deed of Trust to Deutsche Bank 2006-NC2 through a Notice of Corporate Assignment of Deed

---

[2]     Because the publicly recorded assignments attached to Defendants' Motions are matters
of public record, the Court may consider these exhibits when deciding Defendants' Motions to
Dismiss. *Silverman*, 843 F. Supp. 2d at 631.

of Trust. ("2020 Assignment" (ECF No. 14-5) at 2.)  Amy McNulty, the Assistant Vice

President for Deutsche Bank IXIS 2006-HE3, executed the 2020 Assignment.  *Id.*

Plaintiff alleges that monthly payments on the mortgage loan were made to PHH

Mortgage Corporation, but that "in Mid 2020, Amy McNulty . . . claimed the plaintiff was

behind on payments and hired Foreclosure attorneys BWW Law Group, LLC for Substitute

Appointee Equity Trustees, LLC to commence foreclosure." (Compl. ¶ 15.3.)  According to

Plaintiff, a trustee's sale of the Property was initially scheduled to take place on September 14,

2020.  ("Notice of Sale" (ECF No. 1-4).)  However, the Notice of Sale included with Plaintiff's

Complaint also contained a handwritten note that indicated that the sale had been moved to

January 11, 2021.  *Id.*  Plaintiff also claims that an attorney working for the "Foreclosure

Services" issued a notice of default on August 8, 2020, and notified Plaintiff of a non-judicial

foreclosure auction on January 11, 2021.[3]  (Compl. ¶ 15.4.)  On or about December 4, 2020,

Shawn Carter executed a Deed of Gift, conveying his interest in the Property to "noble ali bey,

trustee of 4312 BRIDGEWOOD ROAD IRREVOCABLE TRUST, a religious organization."

(Deed of Gift at 1.)

Plaintiff claims that the Court should void this foreclosure because (1) "the foreclosure

was initiated by a party without standing;" (2) "defendant did not have legal authority to sign the

notice of default letter on behalf of the trustee;" (3) "defendants violated Federal Laws and the

provisions defined in 15 U.S.C. § 1692(e) false or misleading representations while collecting a

debt;" (4) "defendants wrongfully foreclosed on the . . . property and violated the Truth in

---

[3]     Plaintiff also claims that the foreclosure sale was scheduled to occur on December 14,
2020.  (Compl. at 17.)

Lending Act, Regulation Z, 12 CFR § 226.23, breached the contract, and slandered the title."
(Compl. at 1-2.)

### B.   Plaintiff's Amended Complaint

On January 11, 2021, Plaintiff Noble Ali Bey filed a Motion for Leave to Amend, moving for permission to add Shawn D. Carter as a plaintiff in this case and to correct the entity originally named as "BWW Law Firm, LLC" to "BWW Law Group, LLC." (Mot. to Amend at 1.) Plaintiff also asked to "take off Amy McNulty of Deutsche Bank National Company . . . and add Chief Executive Officer and President of PHH Mortgage Corporation which is the attorney in fact and servicer via merger from the entity Ocwen Loan Servicing, LLC." (Mot. to Amend at 1.) Plaintiff identified this individual as Glen Messina. (Mot. to Amend at 1.) Other than these changes in the parties, the factual allegations and substantive legal claims in Plaintiff's Amended Complaint remained the same as those in Plaintiff's original Complaint. (Am. Compl. (ECF No. 8-1).)

As in the original Complaint, Plaintiff's Amended Complaint asserts eight causes of action based on these allegations: (1) Wrongful Foreclosure; (2) a Violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) a Violation of the Truth in Lending Act ("TILA"); (4) Breach of Contract; (5) a Violation of Federal Trust and Lien Laws; (6) Slander of Title; (7) Slander of Credit; and (8) Infliction of Emotional Distress. (Am. Compl. at 16-17.) Plaintiff asks the Court to vacate the foreclosure of the Property, discharge the alleged debt and award him and Shawn Carter declaratory relief and compensatory, punitive and consequential damages. (Am. Compl. at 17-18.)

## C.    Defendants' Motions to Dismiss

Defendant Amy McNulty filed a Motion to Dismiss (ECF No. 4) on December 30, 2020, moving to dismiss the claims in Plaintiff's Complaint pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). Specifically, she claims that Plaintiff Noble Ali Bey lacks standing to file suit as a trustee that is not the original mortgagor, and that, regardless of these standing issues, Plaintiff has failed to support his claims with any plausibly alleged facts. (Mem. in Supp. of Mot. to Dismiss of Amy McNulty ("McNulty's Mem.") (ECF No. 5) at 1-2.) She contends that Plaintiff's "lawsuit consists of a barely comprehensible form foreclosure defense complaint, likely purchased off the internet." (McNulty's Mem. at 1.) Plaintiff never responded to this filing.

On January 12, 2021, Defendants BWW Law Group, LLC, and Robert Michael filed a Motion to Dismiss (ECF No. 10), moving to dismiss the claims in Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6). In support of their Motion, they too contend that Plaintiff Noble Ali Bey lacks standing to bring the claims contained in the Complaint, and that, regardless of these issues with standing, the Complaint does not include factual allegations sufficient to support the claims. (Mem. in Supp. of Mot. to Dismiss of BWW Law Group and Robert Michael ("BWW's Mem.") (ECF No. 11) at 4-5, 12). Plaintiff never responded to this Motion.

Finally, on January 25, 2021, Defendant Glen Messina filed a Motion to Dismiss the Amended Complaint (ECF No. 13). In support of his Motion, Messina notes that the Amended Complaint "appears to misidentify many of the entities involved. [But] [t]o the extent they are defendants to this action, this motion is also filed on behalf of any Deutsche Bank entities, PHH Mortgage Corporation and Amy McNulty." (Mem. in Supp. of Mot. to Dismiss of Messina ("Messina's Mem.") (ECF No. 14).) Defendant Messina raises similar arguments in support of

6

his Motion, including that (1) standing does not exist because the parties to the action prove too indefinite to understand who is bringing suit and in what capacity, and (2) Plaintiff asserts causes of action that prove inadequately alleged or non-existent under Virginia law. (Messina's Mem. at 5, 8-9.) Plaintiff never responded to this Motion, rendering all three Motions to Dismiss now ripe for review.

### E.    Plaintiff's TRO Motion

On January 11, 2021, Plaintiff also filed a Motion to File a Rule 65(a) Temporary Restraining Order, Ex Parte Hearing and Motion to Proceed with Application for Preliminary Injunction, asking the Court to issue a preliminary injunction and temporary restraining order to block the sale of the Property. (TRO Mot. at 2.) Plaintiff states that "there isn't one planned for today January 11, 2021 at 12:30 P.M., but that doesn't stop them from illegally selling it to a third party buyer . . .". (TRO Mot. at 2.) Defendant Messina filed a Response in Opposition to Plaintiff's Motion to File Emergency Temporary Restraining Order on January 25, 2021 ("Messina's TRO Resp." (ECF No. 15)). Plaintiff did not file a reply.

## II.    STANDARD OF REVIEW

### A.    Motion to Amend

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). A party may otherwise amend its pleading only when the opposing party gives their written consent or the court grants them leave to amend. Fed. R. Civ. P.

7

15(a)(2).  The Court should freely grant leave to amend "when justice so requires."  Fed. R. Civ.

P. 15(a)(2).  However, an exception exists when the amendment would prove futile.  *HCMF*

*Corp. v. Allen*, 238 F.3d 273, 275 (4th Cir. 2001).  An amendment is futile when "the proposed

amendments could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910,

917 (4th Cir. 1995).

### B.     Motion to Dismiss

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the

court's jurisdiction over the subject matter of the complaint.  A defendant moving for dismissal

for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that

the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, may

attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

*White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations

omitted).  In either case, the plaintiff bears the burden of proof to establish jurisdiction.

*Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.

1991).  The Court must dismiss an action if it determines that it lacks subject matter jurisdiction.

Fed. R. Civ. P. 12(h)(3).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or

counterclaim; it does not serve as the means by which a court will resolve contests surrounding

the facts, determine the merits of a claim or address potential defenses.  *Republican Party of N.C.*

*v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court will

accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to

the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

### A.   Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to amend the Complaint to add Shawn Carter as a second plaintiff, to correct the entity originally identified as "BWW Law Firm, LLC" to "BWW Law Group, LLC" and to substitute Chief Executive Officer and President of PHH Mortgage Corporation Glen A. Messina for Defendant Amy McNulty. (Mot. to Amend at 1.) Plaintiff attaches the Amended Complaint to his Motion as Attachment A. Aside from these changes in the parties, the

9

substantive allegations in Plaintiff's Amended Complaint remain identical to those in the original Complaint.

Plaintiff properly filed his Amended Complaint as of right under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure. Plaintiff served Defendants on December 22, 2020, and filed his Motion to Amend on January 11, 2021. Accordingly, Plaintiff made this amendment within 21 days of serving Defendants as required by Rule 15(a)(1)(A). Therefore, the Court GRANTS Plaintiff's Motion for Leave to Amend (ECF No. 8). Because the Amended Complaint no longer identifies Amy McNulty as a party to this action, the Court hereby dismisses Defendant Amy McNulty from this action and DENIES AS MOOT her Motion to Dismiss (ECF No. 4).

Generally, the Court must also deny as moot any motions directed at the original pleading, because the filing of an amended complaint renders the pleading that serves as the basis of these motions inoperative. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). However, a number of district courts have deviated from this general principle when the amended complaint proves substantively identical to the original complaint and considered the motion in relation to the amended pleading. *See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 570 (E.D. Va. Jan. 8, 2004) ("Defendants are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court will consider the motion as being addressed to the amended pleading."); *see also Mandali v. Clark*, 2014 WL 5089423, at *2 (S.D. Ohio Oct. 9, 2014) ("Only in the rare case, where the amended complaint is 'substantively identical to the original complaint,' may a properly filed amended complaint be insufficient to moot the motion to dismiss.") (quoting *Greater Cincinnati Coal. for Homeless v. City of Cincinnati*, 2009 WL

10

3029661, at *4 (S.D. Ohio Sept. 16, 2009); *Patton Elec. Co., Inc. v. Rampart Air, Inc.*, 777 F.

Supp. 704, 712-13 (N.D. Ind. 1991) ("'[D]efendants should not be required to file a new motion

to dismiss simply because an amended pleading was introduced while their motion was pending.

If some of the defects raised in the original motion remain in the new pleading, the court simply

may consider the motion as being addressed to the amended pleading.  To hold otherwise would

be to exalt form over substance.'") (quoting 6 Wright, Miller & Kane, *Federal Practice &*

*Procedure*, § 1476 at 556-58 (2d ed. 1990).

        Defendants BWW and Michael's Motion to Dismiss was filed in response to Plaintiff's

original Complaint and mainly addresses the issues of Plaintiff Noble Ali Bey's standing.

However, the Motion also raises arguments that squarely apply to the Amended Complaint, as

they challenge the sufficiency of the substantive factual allegations that remained unchanged

between the two versions of this document.  (BWW's Mem. at 12-15.)  Therefore, the Court will

not deny this Motion as moot and will consider the substantive arguments as they pertain to the

sufficiency of Plaintiff's Amended Complaint.

        **B.      Defendants' Motions to Dismiss**

        The Court affords *pro se* complaints a liberal construction. *Laber v. Harvey*, 438 F.3d

404, 413 (4th Cir. 2006).  However, the Court need not attempt "to discern the unexpressed

interest of the plaintiff." *Id.*  Nor does the requirement of liberal construction excuse a clear

failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*,

901 F.2d 387, 390-91 (4th Cir. 1990) (affirming dismissal of certain claims brought by *pro se*

plaintiff despite liberal construction).  As explained by the Fourth Circuit, "[t]hough [*pro se*]

litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally

evident in the work of those trained in law, neither can district courts be required to conjure up

and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Even construing Plaintiff's Amended Complaint liberally as the Court must, the Court finds that Plaintiffs Noble Ali Bey and Shawn Carter have failed to state a claim upon which relief can be granted.

As an initial matter, Plaintiff Noble Ali Bey lacks standing to bring the instant suit as, according to the publicly recorded documents attached to his original Complaint, he constitutes the trustee of the Property. A trustee cannot represent a trust *pro se* in federal court. *See Chien v. Commonwealth Biotechnologies, Inc.*, 484 B.R. 659, 666 (E.D. Va. 2012) ("[I]t is well settled that a trustee cannot represent the 'trust' *pro se*, as the trustee is not the 'real party in interest.'"). Indeed, an individual's right to appear on his own behalf constitutes a privilege personal to him. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . ."); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear *in propria persona* in his own behalf, that privilege is personal to him."). This privilege does not give him authority to appear as an attorney for another. *Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 171-72 (E.D. Va. 1994) (explaining the purposes behind the "near uniform proscription on non-lawyers representing others in court").

A trustee's status represents one of a fiduciary to the trust, and his duties as trustee include administration of the trust's assets. *See Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985) ("One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets . . ."). Therefore, it cannot be said that he appears on his *own* behalf when he attempts to assert claims on behalf of the trust, as he does not represent the "real party in interest." *Chien*, 484 B.R. at 666.

12

Consequently, "[a] trustee appearing in a solely representative capacity requires a lawyer in federal court." *Id.* (internal citations omitted); *see also Knoefler v. United Bank of Bismark,* 20 F.3d 347, 348 (8th Cir.1994) ("A nonlawyer, such as these purported 'trustee(s) pro se' has no right to represent another entity, i.e., a trust, in a court of the United States."); *C.E. Pope Equity Tr.,* 818 F.2d at 697–98 ("Because [a trustee of the plaintiff trust] is not the actual beneficial owner of the claims being asserted by the Trusts (so far as one can tell from the record), he cannot be viewed as a 'party' conducting his *'own* case personally' within the meaning of [28 U.S.C. § ] 1654. He may not claim that his status as trustee includes the right to present arguments *pro se* in federal court.").

Moreover, regardless of the party bringing this suit, the Amended Complaint has failed to state a claim upon which relief can be granted, as the Amended Complaint and the allegations contained therein prove largely incomprehensible and contradictory. Even affording the Amended Complaint a liberal construction, the disjointed compilation of various vague factual allegations and indeterminate legal claims offers little guidance to the Court as to what relief Plaintiff is actually seeking or on what facts he bases his claims for relief. In fact, a number of courts have already encountered complaints with similar — if not exact[4] — phrases and ambiguous theories of recovery and determined that they do not meet the requisite pleading standard to survive a motion to dismiss. *See Hill v. SouthLaw PC*, 2020 WL 836728, at *4 (D. Neb. Feb. 20, 2020) (describing similar complaint as consisting "largely of threadbare recitals of the elements of [a cause of action], supported by conclusory statement rather than factual allegations"); *Castro v. Pascual*, 2020 WL 733127, at *2 (N.D. Cal. Feb. 13, 2020) (describing

---

[4]     Based on these similarities and the frequency of their appearance in other cases, it appears that Plaintiff has either cut and paste the allegations from other complaints or downloaded a form complaint from the internet.

similar complaint as "rambling" and "nonsensical"); *Lee v. Aldridge Pite*, 2019 WL 8277255, at *2 (N.D. Ga. Dec. 16, 2019) (describing similar claims as "rang[ing] from straightforward to inexplicable"). Moreover, the exact nature and role of the individuals and entities involved in this case remains unclear. Indeed, the Amended Complaint mentions Defendant Glen Messina once, and fails to provide any factual allegations as to his role in this case.

However, the Court will individually review each of the eight claims for relief laid out in the Amended Complaint, and attempt to discern whether the facts as alleged support any of these causes of action. The Court finds that they do not.

### 1.   *Wrongful Foreclosure*

The Amended Complaint first asserts a claim for wrongful foreclosure of the Property. (Am. Compl. at 1, 16, ¶ 1.1.) Plaintiffs appear to base this claim on the assertion that "the foreclosure was initiated by a party without standing." (Am. Compl. at 1, ¶ 1.1.) Specifically, the Amended Complaint states that the "foreclosing party did not have standing to execute the power of sale clause in the deed of trust, and therefore the non-judicial foreclosure is void." (Am. Compl. at 16.)

This wrongful foreclosure claim fails, because Virginia, a non-judicial foreclosure state, does not require an interested party to prove standing in a court of law before initiating the foreclosure process. *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 698 (E.D. Va. 2010) (citing Va. Code §§ 55-59.1-55.59.4). As Defendant Messina emphasizes, Virginia courts have repeatedly held that a lender does not need to demonstrate its "standing" before initiating foreclosure proceedings. *See Hoarth v. Bank of New York, N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011) (quoting Va. Code § 55-59(7)) ("As Virginia law provides, in the event of default on a deed of trust, the trustee 'shall forthwith declare all the debts and obligations secured by the deed

of trust at once due and payable and may take possession of the property and proceed to sell at

the same auction' without any need to first seek a court decree"); *Gibson v. Wells Fargo Bank*,

2011 WL 221188, at *3 (E.D. Va. Jan. 19, 2011) ("In Virginia, Sections 55–59.1 through 55–

59.4 of the code lay out the procedural requirements an interested party must satisfy in order to

initiate a foreclosure. These provisions do not require the foreclosing party to demonstrate

standing in a court of law.  The Court therefore rejects Plaintiffs' 'standing' argument.");

*Zambrano v. HSBC Bank USA, Inc.*, 2010 WL 2105164, at *6 (E.D. Va. May 25, 2010)

("Plaintiff's Amended Complaint generally asserts a 'show me the note' claim, in which

Defendants must come to a court of law and prove their authority or 'standing' to foreclose on

the secured Property.  The claim is contrary to Virginia's non-judicial foreclosure laws.").

Plaintiffs also appear to challenge the foreclosure based on the way that the mortgage

loan was securitized.  (Am. Compl. ¶¶ 13.1-13.11.)  However, to the extent that a plaintiff with

standing to bring this suit would attempt to challenge the foreclosure based on the securitization

of his loan, he could not do so, as the securitization of a loan does not invalidate or otherwise

render the loan unenforceable as a lien against the property.  *See Suggs v. M & T Bank*, 230 F.

Supp. 3d 458, 463 (E.D. Va. 2017) ("[S]ecuritization does not relieve a borrower of her

mortgage obligations (e.g., paying the mortgage) or extinguish a lender's right to foreclose on a

secured property"); *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va.

2012) (quoting *Upperman v. Deutsche Bank Nat'l Tr. Co.*, 2010 WL 1610414, at *2-4 (E.D. Va.

Apr. 12, 2010) ("[P]laintiffs argue that the defendants lacked 'standing' to foreclose upon the

Property because the securitization of the mortgage made it such that the defendants cannot show

they were the holder of the applicable note at the time of the sale . . . [However,] 'there is no

legal authority that the sale or pooling of investment interest in an underlying note can relieve

15

borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property.'"). Moreover, "individual borrowers cannot challenge violations of securitization agreements because the individual borrower is not a party to or third-party beneficiary of such agreements." *Suggs*, 230 F. Supp. 3d at 463; *see also Figueroa v. Deutsche Bank Nat'l Tr. Co.*, 2013 WL 12233539, at *2 (E.D. Va. July 10, 2013) ("There is no contention that the terms of the [securitization agreement] expressly affect or restrict Deutsche Bank's rights against the plaintiff, . . . [n]or is the plaintiff a party to the [agreement], or a third-party beneficiary under the [agreement]. The [agreement], or any violation thereof, therefore, provides no legal basis upon which to enjoin the foreclosure.").

Finally, by signing the Deed of Trust, Shawn Carter agreed that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Deed of Trust at 11.) "Given such an agreement, the note was freely transferable without prior notice under Virginia law," and claims to the contrary in the Complaint lack merit. *Gallant v. Deutsche Bank Nat. Tr. Co.*, 766 F. Supp. 2d 714, 721 (W.D. Va. 2011); *see also Daugherty v. Diment*, 385 S.E.2d 572, 574-75 (Va. 1989) (noting that assignor is free to make an assignment without the consent of anyone where contract included clause specifying free assignability). Absent contrary allegations, the foreclosing lender, Deutsche Bank 2006-NC2, properly took over the original lender's rights, including the ability to foreclose on the property. *See* Va. Code § 55–59(9) ("The party secured by the deed of trust . . . shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute."). Thus,

even a plaintiff with standing to bring this suit would not have the ability to challenge the validity of any transfers or assignments, given the free assignability clause in the agreement.

Based on these principles and the fact that no further amendment to the Amended Complaint could cure the deficiencies in this claim, the Court dismisses Plaintiffs' wrongful foreclosure claim with prejudice as to all parties.

### 2.      *Violation of Fair Debt Collection Practices Act ("FDCPA")*

The Amended Complaint also brings a claim under the FDCPA, stating that "defendant violated one or more of the provisions contained in 15 U.S.C. §§ 1692a-1692g." (Am. Compl. at 16-18.) Specifically, Plaintiffs allege that "the law firm" — presumably BWW —and "attorney" — presumably Robert Michael — involved in this suit did not meet the requirements mandated by the FDCPA "to be a legal debt collector." (Am. Compl. ¶ 2.1.) They claim that these Defendants did not have a license to act as a debt collector or register with the Attorney General of Virginia and that, therefore, they acted in violation of the FDCPA. (Am. Compl. ¶¶ 19.3-19.10.) From these allegations, it does not appear clear whether Plaintiffs also bring this FDCPA claim against Defendant Glen Messina.

Regardless, Plaintiffs' allegations pursuant to the FDCPA fail to state a claim upon which relief can be granted. The FDCPA primarily aims "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Act further defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In simpler terms, "this provision defines a debt collector as (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another;* or (3) a person who collects *its own debts,* using *a*

*name other than its own* as if it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) (emphasis in original).

Plaintiffs fail to state a claim under this statute, because they do not explain why the Court should conclude that any of the Defendants, much less Michael or BWW Law Group, acted as "debt collectors" under the definition provided by this Act. Although the Amended Complaint states that the "defendant is a debt collector as noted in their emails and phone communications as well as the business description," it provides no specific details regarding these representations or communications that would allow the Court to conclude that any of the Defendants meet the statutory definition of "debt collector" as provided by the FDCPA, much less allege that Defendants ever attempted to collect any debts. (Am. Compl. ¶ 10.3.)

Moreover, to the extent that Plaintiffs *do* bring this claim against Defendant Glen Messina, it proves well-settled that mortgagors and mortgage servicing companies generally do not qualify as debt collectors under the FDCPA. *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010); *Horvath v. Bank of New York, N.A.*, 2010 WL 538039, at *3 (E.D. Va. Jan. 29, 2010) ("Mortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA."); *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) ("[T]he law is well-settled . . . that creditors, *mortgagors*, and *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA.") (emphasis in original). Furthermore, the FDCPA clearly exempts "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Again, the Court has no basis for finding that any of the individuals named in the Amended Complaint performed any acts that

18

could be considered "debt collection" or that these individuals should not be exempt from liability under the FDCPA.

Even assuming that the Amended Complaint had alleged facts sufficient to establish that any of the Defendants constituted debt collectors, the Amended Complaint does not specify any conduct by Defendants that allegedly violated the FDCPA. The Amended Complaint suggests that Michael or BWW violated the FDCPA by failing to obtain a license to practice debt collection in the state. Indeed, the FDCPA prohibits debt collectors from engaging in "abusive, deceptive and unfair debt collection practices." 15 U.S.C. § 1692(a). A subset of these abusive and deceptive practices includes the "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). Therefore, a debtor who has not been properly licensed by the state in which it attempts to collect debt violates the FDCPA. *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995); *Russey v. Rankin*, 911 F. Supp. 1449, 1458-59 (D.N.M. 1995); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1413-114 (D. Conn. 1990). However, unlike many other states, Virginia does not have a licensing requirement for debt collectors. Therefore, Defendants cannot be held liable under the FDCPA for failing to obtain proper licensing to act as debt collectors.

Because the Amended Complaint fails to allege the applicability of the FDCPA to this action or otherwise state a claim under this Act, the Court dismisses this claim against all Defendants without prejudice.

### 3.     *Violation of Truth in Lending Act*

The Amended Complaint also alleges a violation of the Truth in Lending Act, Regulation Z, 12 C.F.R. § 226.23. (Am. Compl. at 17.) It broadly states that a "security agreement with a lender can be rescinded if they have not provided the proper disclosures." (Am. Compl. ¶ 3.1.)

19

The Amended Complaint goes on to claim that Defendant Michael "misrepresented himself to the court as a licensed attorney when he/she does not have a license to practice law." (Am. Compl. ¶ 3.5.)  The Amended Complaint also repeatedly states that the "original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange.  The failure to disclose the true nature of the exchange is clearly misrepresentation, fraud, harassment, unfair means, and deception to collection debt."  (Am. Compl. ¶ 12.1.)

"Congress passed the TILA to assure a meaningful disclosure of credit terms to avoid the uninformed use of credit by consumers." *Suggs*, 230 F. Supp. 3d at 465.  The Act requires creditors to provide borrowers with "'clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.'" *Id.* (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)).  Importantly, a borrower may only hold assignees of the original lender liable if the violation for which they bring suit appears clear on the face of the disclosure statement. *Moss v. Stanley*, 2020 WL 7000952, at *3 (D.S.C. Sept. 10, 2020) (citing 15 U.S.C. § 1641(a)).

Given the vague and conclusory allegations in the Complaint, the exact nature of the Amended Complaint's claim under the TILA proves unclear.  For one, it pleads no facts suggesting that a violation of the TILA was apparent on the face of the original disclosure statement or otherwise provide any reason why the Court should hold Defendants, who are not the original lenders, liable for any alleged violations of the TILA.  The claim that the "original debt was zero because the Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange" proves too nonsensical and indefinite to discern how it could support a claim under the TILA.

Moreover, 12 C.F.R. § 226.23, the section cited by the Amended Complaint in support of

its TILA claim, provides a consumer's right to rescind only in limited circumstances.  As stated

by this section, the right to rescind does not apply to residential mortgage transactions.  12

C.F.R. § 226.23(f)(1); *Davis v. Wells Fargo Bank, N.A.*, 2014 WL 106257, at *3 (E.D. Va. Jan.

8, 2014).  Given that the Deed of Trust submitted by Plaintiff Noble Ali Bey in support of this

case provides that the borrower agrees to occupy and use the Property as his principal residence

and that neither Noble Ali Bey nor Shawn Carter have provided other information regarding the

Property's purpose or primary use, the Court must assume that the transaction here constituted a

residential mortgage transaction.  As a result, a right to rescind this agreement under this statute

does not exist under the facts as alleged.

Finally, even if the Amended Complaint had alleged facts sufficient to support a claim

for relief under the TILA, this claim proves time-barred.  *See* 15 U.S.C. § 1640(e) (providing

time bars for various provisions in the TILA that range from one year after the date the violation

occurred to three years after the date the violation occurred); *see also Suggs*, 230 F. Supp. 3d at

466 ("[A] plaintiff must bring an action for violation of the TILA within one or three years of the

violation, depending on the specific violation.").  Since the claims in the Amended Complaint

seem to involve events that occurred at the origination of the mortgage loan, it appears that over

fourteen years have passed since any possible violation occurred.  As a result, neither Noble Ali

Bey nor Shawn Carter can assert a violation of the TILA based on these alleged violations.  *See*

*Naylor v. Wells Fargo Home Mortg., Inc.*, 2016 WL 55292, at *7 (W.D.N.C. Jan. 5, 2016)

(dismissing TILA claims as time-barred because they were based on a loan consummated over

eleven years before the suit was initiated); *Wolf v. Fed'l Nat. Mortg. Ass'n*, 830 F. Supp. 2d 153,

160 (W.D. Va. 2011) (dismissing TILA claims as time-barred because plaintiff failed to file suit within three years of obtaining her mortgage loan).

In sum, the allegations contained in the Amended Complaint prove too sparse and conclusory to support a TILA claim against any of the Defendants.  Because of the time bar on this claim, the Court dismisses Plaintiff's TILA claim with prejudice.

### 4.    *Breach of Contract*

Plaintiff has also failed to allege a viable breach of contract claim.  To assert a breach of contract claim in Virginia, a plaintiff must allege (1) the existence of legally enforceable obligation of one party to the other, (2) a violation of that right or duty, and (3) some consequence, injury or damage caused by this violation.  *Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 252 (4th Cir. 2014) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

The Amended Complaint fails to state such a claim.  The Amended Complaint alleges that "defendant contracted to provide a loan to the plaintiff" and that "defendant's duty was breached because they never provided a loan to the plaintiff." (Am. Compl. ¶¶ 8.6-8.7.) However, the Amended Complaint also states that when "the plaintiff" purchased the Property, he obtained a mortgage loan in the amount of $97,500 to finance this purchase. (Am. Compl. ¶ 13.1.)  Plaintiffs provide the Deed of Trust given by Shawn Carter in 2006 in exchange for the mortgage loan of $97,500. (Deed of Trust at 2-3.)  In the very next paragraph though, the Amended Complaint again contradicts itself, stating that the "plaintiff was never provided a loan; the original debt was zero because Plaintiff's financial asset was exchanged for FED's promissory notes in an even exchange." (Am. Compl. at 17, ¶ 13.2.)  Plaintiff further alleges that he made payments on a "fake loan," which, including interest, taxes and legal expenses, amounted to $120,000. (Am. Compl. ¶ 8.14.)

22

From these allegations, and notwithstanding the liberal construction afforded to *pro se* complaints, the Amended Complaint does not make clear what contract is at issue or what breach has allegedly occurred. While it alleges a legally enforceable obligation (the mortgage loan), the Amended Complaint fails to establish what legal obligations any of the Defendants had under this contract, much less how they might have breached these obligations. The allegations contained in the Amended Complaint appear to contradict each other — in one paragraph the Amended Complaint acknowledges that Shawn Carter received a loan to finance the purchase of the Property (and provides the legal documents to support the existence of this transaction); yet, in the next paragraph the Amended Complaint refers to the loan as "fake." From these conclusory, contradictory and often nonsensical allegations, the Court cannot determine what breach Defendants allegedly committed, much less what contract Plaintiffs attempt to enforce.[5] Regardless of the identity of the plaintiffs or the defendants, this breach of contract claim fails on the facts as alleged, and the Court therefore dismisses it without prejudice.

### 5.   *Slander of Title*

The Amended Complaint's slander of title claim also lacks merit. A slander of title claim requires a plaintiff to demonstrate that another party "maliciously published false words, which disparaged plaintiff's property causing plaintiff to suffer special damages." *Warren v. Bank of Marion*, 618 F. Supp. 317, 320 (W.D. Va. 1985). "To prove slander of title, [Plaintiff] must show that [Defendants] acted with malice or in reckless disregard of the truth or falsity of the statement." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015)

---

[5]     Furthermore, even if Plaintiff could make out a cognizable claim that a loan was never provided to him, this claim would almost certainly be foreclosed by the statute of limitations for contract actions in Virginia, as the contractual breach would have occurred over fourteen years ago. Va. Code § 8.01-246 (prescribing five-year statute of limitations for written contracts and three-year statute of limitations for oral contracts).

(internal quotations omitted).  While "reckless disregard" consists of conduct "significantly higher than ordinary negligence," "malice" includes a "corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure." *Id.* at 411-12 (citing *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 851 n.3 (Va. 1984)).

Plaintiffs' slander of title claim fails, because they have not alleged that Defendants published false words with malice that disparaged either Noble Ali Bey or Shawn Carter's title to the Property.  The Amended Complaint merely states that "[D]efendants have caused various documents including a Notice of Trustee Sale which has impaired the plaintiff's title which constitutes slander of title."  (Am. Compl. at 17.)  This incomplete and nonsensical statement does not establish that Defendants ever made any false or even misleading statements.  Additionally, Plaintiffs never contend that the initial Deed of Trust represented an invalid lien against the Property or that any of the other transfers, assignments or documents provided in connection with the Amended Complaint were invalid, fraudulent or contained otherwise false statements.  (Am. Compl. at 17.)  Moreover, the Amended Complaint contains no allegations that suggest that Defendants acted with malice or reckless disregard for the truth.  Accordingly, the Court therefore dismisses Plaintiffs' slander of title claim without prejudice.

### 6.    *Slander of Credit*

As previously stated by this District in considering a similar complaint, "Virginia does not recognize a cause of action for slander of credit, and . . . the Court is neither required nor permitted to construct Plaintiff's arguments for [him]." *Norman v. Wells Fargo Bank, N.A.*, 2018 WL 1037048, at *5 (E.D. Va. Feb. 23, 2018).  As Virginia still does not recognize such a cause of action, Plaintiffs' slander of credit claim will be dismissed with prejudice.

### 7.     *Infliction of Emotional Distress*

The Amended Complaint also fails to state a claim for infliction of emotional distress.

To state a claim for negligent infliction of emotional distress in Virginia, a plaintiff must allege

(1) a physical injury (2) proximately caused (3) by negligent conduct (4) wantonly inflicted by a

defendant (5) upon the plaintiff. *Guerro v. Deane*, 2010 WL 670089, at *16 (E.D. Va. Feb. 19,

2010) (citing Virginia law).  Absent any physical injury to the plaintiff, a plaintiff otherwise may

state a claim for infliction of emotional distress, when they can show that:

> One, the wrongdoer's conduct was intentional or reckless . . . Two, the conduct
> was outrageous and intolerable in that it offends against the generally accepted
> standards of decency and morality . . . Three, there was a causal connection
> between the wrongdoer's conduct and the emotional distress.  Four, the emotional
> distress was severe.

*Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974).

Virginia has set a high standard to meet, as Virginia courts find liability "only where the

conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (internal quotations omitted).  At

the pleading stage, mere conclusory allegations of "severe emotional distress" cannot sufficiently

establish the fourth prong of this claim — a plaintiff must allege with some specificity the ways

in which their distress impacted their mental or physical health, and led to some tangible loss or

damage. *Id.* at 163 (finding plaintiff's allegations that she became nervous, could not sleep,

experienced stress and its "physical symptoms" insufficient to establish an infliction of

emotional distress claim when she had not alleged "any objective physical injury caused by the

stress, that she had sought medical attention, that she was confined at home or in the hospital, or

that she lost income").  "[L]iability arises only when the emotional distress is extreme, and only

25

where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.*

The Amended Complaint has not alleged any physical injury to any party as a result of Defendants' actions, so it has not stated a claim for negligent infliction of emotional distress. Moreover, the Amended Complaint has failed to allege a sufficient level of severity to meet the requisite standard for intentional infliction of emotional distress. In fact, the Amended Complaint contains a solitary sentence pertaining to this cause of action: "The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress." (Am. Compl. at 17.) This conclusory allegation of severe emotional distress proves insufficient to state a claim, given that the Court has no basis to determine how Defendants' alleged actions impacted either Noble Ali Bey, Shawn Carter or any other individual, or otherwise caused them to suffer any damage.

Moreover, as noted by Defendants, mere foreclosure on a home does not alone establish the level of outrageous conduct necessary to support an infliction of emotional distress claim. *Suggs*, F. Supp. 3d at 464; *see also Webb v. Equifirst Corp.*, 2016 WL 1274618, at *10 (W.D. Va. Mar. 31, 2016) (collecting cases). Certainly, "[w]hile undergoing foreclosure on one's residence is understandably upsetting, foreclosure is a legal remedy available to the lender under the law and under the terms of the documents the [borrower] signed." *Webb*, 2016 WL 1274618, at *10. Therefore, based solely on the Amended Complaint's allegations that Defendants foreclosed on the Property, the Court cannot reasonably conclude that Defendants' conduct exceeded all possible bounds of decent society. Consequently, the Court dismisses the Amended Complaint's infliction of emotional distress claim without prejudice.

### 8.    *Violation of Federal Trust and Lien Laws*

Plaintiffs also attempt to assert a vague claim that Defendants "violated Federal Trust and Lien Laws when he/she signed on behalf of the trustee without legal authorization," and that the "actions of defendants are determined unfair and deceptive business practices in violation of Federal Laws, and Federal Security statutes." (Am. Compl. at 17.)  However, without identifying specific statutes or other causes of action, these conclusory statements provide little basis for the Court to determine if Noble Ali Bey, Shawn Carter or any other individual is entitled to relief. Indeed, as Defendant Messina notes, "[c]ourts need not discern the unexpressed intent of the plaintiff or take on 'the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'"  (Messina's Mem. at 17 (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).)

Given that all of the claims in the Amended Complaint lack merit, the Court GRANTS both BWW and Michael's Motion to Dismiss (ECF No. 10) and Messina's Motion to Dismiss (ECF No. 13), and dismisses all of claims asserted in the Amended Complaint as to all Defendants.

### C.    **Plaintiff's TRO Motion**

Because the Court has found that the Amended Complaint has failed to allege any claim upon which relief can be granted, the Court also dismisses Plaintiffs' Motion for an Emergency Temporary Restraining Order, Ex Parte Hearing and Motion to Proceed with Application for Preliminary Injunction (ECF No. 9).

A preliminary injunction pursuant to Federal Rule of Civil Procedure 65 represents an extraordinary remedy that serves to preserve the status quo and prevent irreparable harm. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).  Thus, a plaintiff seeking a preliminary

27

injunction must clearly demonstrate:  (1) the likelihood of success on the merits, (2) the

likelihood of irreparable harm in the absence of the requested relief, (3) a balance of equities that

weighs in his favor, and (4) a public interest that weighs in favor of the requested relief.  *Winter*

*v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Rule 65(b) also provides that the Court may issue a

temporary restraining order without notice to the adverse party if "specific facts in the affidavit

or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will

result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b).

The same standard that governs the issuance of preliminary injunctions also governs the standard

for the issuance of temporary restraining orders.  *Central Radio Co., Inc. v. City of Norfolk*, 2012

WL 12929731, at *1 (E.D. Va. May 4, 2012).

 Because the Court has found that Plaintiffs have failed to state a viable claim for relief in

the Amended Complaint, the Court likewise finds that Plaintiffs have failed to demonstrate a

"likelihood of success on the merits," given that the claims from the Amended Complaint

presumably support Plaintiffs' application for a preliminary injunction and TRO.  Indeed, the

Court has no legal or factual basis to conclude that either Noble Ali Bey or Shawn Carter have

any right to prevent the sale of the Property.  Therefore, the Court denies Plaintiff's TRO Motion

(ECF No. 9).

## IV. CONCLUSION

 For the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Leave

to Amend (ECF No. 8), DENIES AS MOOT Defendant McNulty's Motion to Dismiss (ECF No.

4), GRANTS Defendants BWW and Michael's Motion to Dismiss (ECF No. 10) and Defendant

Messina's Motion to Dismiss (ECF Nos. 13) and DENIES Plaintiff's TRO Motion (ECF No. 9).

Therefore, the Court DISMISSES Plaintiff's Amended Complaint as to all Defendants, because

Plaintiff has failed to state a claim upon which relief can be granted regardless of the parties to this suit. Specifically, the Court DISMISSES WITH PREJUDICE Plaintiff's Wrongful Foreclosure claim, Truth in Lending Act ("TILA") claim and slander of credit claim, but DISMISSES WITHOUT PREJUDICE[6] Plaintiff's other claims.

       An appropriate order will issue.

       Let the Clerk file a copy of this Order electronically and notify all counsel of record.

       It is so ORDERED.

                                                       _____ /s/ _____

                                           David J. Novak
                                         United States District Judge

Richmond, Virginia
Dated:  March 8, 2021

---

[6]      Although the Court dismisses these claims without prejudice at this time, it doubts that Plaintiffs can fix the deficiencies through further amendments, especially because they have already amended their Complaint once in response to a motion to dismiss.